**Hector CASTELLON, Petitioner,**

v.

**Harol WHITLEY, et al., Respondents.**

**No. CV–N–88–577–ECR.**

United States District Court, D. Nevada.

March 23, 1990.

---

Theodore D. Gamboa, Reno, Nev., for petitioner.

Waldo DeCastroverde, Deputy Atty. Gen., Carson City, Nev., for respondents.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Hector Castellon, an inmate formerly held at the Nevada State Prison and currently at the Ely State Prison, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition sets forth six separate grounds in support of his claim for relief from his murder, kidnapping and robbery convictions in state court.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's first ground for relief is that by not having his own individual "defense" interpreter, he was denied his due process rights of confrontation, cross-examination, and his right to participate in his trial. In particular, petitioner contends that he was denied effective assistance of counsel due to his inability to communicate confidentially with his attorney at the preliminary hearing and at trial.

There were two interpreters at the preliminary hearing and at the trial. One interpreter stayed behind the defense table while the second interpreter was positioned by the witness table to translate the testimony of the witnesses. The court at the preliminary hearing denied the defendants' motion for individual interpreters for each of the four defendants. Instead, the court was willing to grant a recess upon request to allow counsel time to confer with their clients.

Similar arrangements were made at trial except on one occasion, the court "borrowed" a court interpreter from the defense table to interpret one of the state's witness's testimony.

As long as the defendant's ability to understand the proceedings and communicate with counsel is unimpaired, the appropriate use of interpreters in the courtroom is a matter within the court's discre-

tion. *U.S. v. Lim*, 794 F.2d 469, 471 (9th Cir.1986). The interpreter arrangement in *Lim* was similar to the arrangement Castellon had at both the preliminary hearing and at trial. During most of the trial, two court appointed interpreters were present: one to interpret the witness' testimony and the other to assist the defendants. In addition, defendant Lim had his own interpreter.

In *Lim*, the trial court "borrowed" a court interpreter from the defense table in order to assist a witness. *Id.* The circuit court held this action did not interfere with the defendants' ability to understand the proceedings since the interpreter used a microphone, there was no objection at trial, and no direct evidence that the defendants could not actually understand. *Id.* In addition, the defendants' ability to communicate with counsel was not impaired where communication during trial was by means of notes and defendant Lim's interpreter assisted during breaks and recesses. *Id.*

In the instant case, petitioner did object when the trial court "borrowed" an interpreter and none of the defendants had their own interpreter. However, these factual distinctions from *Lim* does not lead to a different conclusion. Similar to *Lim*, there was no direct evidence that the petitioner could not actually understand the proceedings and both courts allowed the petitioner to request recesses in which the petitioner could consult with his attorney with the assistance of an interpreter.

■ · Petitioner argues that the court was required to appoint independent interpreters for each defendant. However, even when the court uses a single interpreter, it does not violate sixth amendment rights. *U.S. v. Bennett*, 848 F.2d 1134, 1141 (11th Cir.1988). In *Bennett*, a single interpreter sat near the witness stand and provided translation by speaking into a microphone that fed into headsets worn by all three Hispanic defendants. Since the defendants had opportunities to recess upon request to consult with their attorneys, the court held the use of a *single* interpreter did not impair attorney-client communications. *Id.*

During all of the preliminary hearing and at trial, except on one occasion where the court "borrowed" an interpreter, petitioner and his co-defendants were provided with *two* interpreters. One interpreter was positioned by the witness stand to interpret the proceedings, the second was positioned near the defense table. The defendants were allowed to recess upon request to consult with their attorneys with the use of an interpreter. This Court finds that neither petitioner's ability to understand the proceedings nor his ability to communicate with counsel was impaired. Therefore, neither the justice court's and trial court's refusal to provide individual "defense" interpreters for each defendant nor the trial court's "borrowed" use of an interpreter violated petitioner's sixth amendment rights.

## II. EXCLUSION OF WITNESS AT PRELIMINARY HEARING

Petitioner's second ground for relief is that the justice court's error in refusing to allow petitioner's witness to testify violates his right to cross-examine witnesses and present evidence on his behalf. At the preliminary hearing, petitioner invoked the witness exclusion rule for witnesses not currently testifying in court. Two days later, the defense called interpreter Ms. Gutierrez to testify regarding some out-of-court statements made by the State's material witness Domingo Gonzales. Ms. Gutierrez testimony was proffered to establish that Mr. Gonzales was an accomplice and therefore, under Nevada law, his testimony required corroboration. The State objected to Ms. Gutierrez testimony because she was one of the court interpreters during the course of the preliminary hearing. The court barred her testimony under the witness exclusionary rule. In addition, the court felt allowing Ms. Gutierrez to testify would undermine the integrity of her role as an interpreter. When the defense attempted to put defense counsel on the stand in order to present the same testimony, the court barred such testimony under the exclusionary rule.

■ Petitioner asserts that the improper exclusion of the proffered testimony at his preliminary hearing violated his constitutional right to cross-examine witnesses and present witnesses on his behalf. The Nevada witness preclusion statute carves out an exception which prohibits the court from excluding a "person whose presence is shown by a party to be essential to the presentation of his cause." N.R.S. 50.155 2(c). As an interpreter for the defendant, certainly Ms. Gutierrez was "essential to the presentation of his cause." Therefore, the justice court erred under state law in excluding Ms. Gutierrez as a witness for the defense.

■ The petitioner contends that the court's failure to follow state procedure by excluding Ms. Gutierrez's testimony led the court to improperly admit the uncorroborated testimony of an "accomplice," as required pursuant to N.R.S. 175.291. However, federal constitutional law does not require corroboration of an accomplice's testimony as a prerequisite for admissibility. *Nolen v. Wilson*, 372 F.2d 15, 17–18, *cert. denied* 387 U.S. 948, 87 S.Ct. 2085, 18 L.Ed.2d 1337. State procedural error is not a proper ground for federal habeas relief, unless that error results in a denial of due process. *Smith v. Phillips*, 455 U.S. 209, 220, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982); *Bashor v. Risley*, 730 F.2d 1228, 1238 (9th Cir.1984), *cert. denied*, 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984).

If the exclusion or admission of testimony was erroneous under state law, the argument is cognizable under a habeas petition only if the exclusion or admission of the testimony rendered his trial so "fundamentally unfair as to violate federal due process." *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir.1985). "Fundamentally unfair" in a trial setting means: the exclusion or admission was so prejudicial as to erode the standard of proof beyond a reasonable doubt and cast doubt on the conviction. *Id.*

Petitioner's habeas claim refers to an improper exclusion and admission of testimony not at the trial level, but at the preliminary hearing. At this pretrial stage, the evidence required to bind a suspect over for trial need not be sufficient to support a conviction. *Maskaly v. State*, 85 Nev. 111, 114, 450 P.2d 790, 792 (1969). Nor must the state produce the quantum of proof required to establish the guilt of the accused beyond a reasonable doubt. *Robertson v. Sheriff*, 85 Nev. 681, 682, 462 P.2d 528, 529 (1969). The state is only required to present enough evidence to support a reasonable inference that the accused committed the offense. *Kinsey v. Sheriff, Washoe County*, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971).

■ In the instant case, petitioner was charged with kidnapping, robbery and murder. At the preliminary hearing, Domingo Gonzales testified that sometime in January, 1983, he overheard the defendants discussing alternative plans with respect to the robbery and kidnapping of Antonio Luis Martinez–Moles. Transcript of Preliminary Hearing, Exhibit A to Answer (document # 23), pages 1148–1161. Mr. Gonzales further testified to the defendants' conduct and statements made later that day. He testified that petitioner explained to Gonzales that they had captured Martinez–Moles and that they had been forced to kill him. *Id.* at 1167, 1173. Gonzales observed a red Cadillac parked outside when the men had returned. *Id.* at 1169. Gonzales testified that he observed the defendants examining precious stones which had been taken from the victim's car. *Id.* at 1168. He also saw the cocaine, wristwatch, ring and chain which had been taken from the victim. *Id.* at 1175. When presented with a photograph (State's Exhibit 1) of the victim taken prior to the murder, Mr. Gonzales identified the ring on the victim's hand as the same one he observed and handled that he testified was given to him by petitioner Castellon.

State's witness, Vanis Robbins was a personal friend of the victim who testified that the last time he saw the victim alive, on January 22, 1983, the victim was wearing the same clothes he had on when the victim was discovered dead (as shown in State's Exhibits 13, 17, and 18, all photographs). *Id.* at 1231. Robbins further tes-

tified that he knew the victim owned and drove the red Cadillac and that he never saw the victim without the ring and watch he was wearing in the photograph taken while the victim was still alive (State's Exhibit 1; also identified by Mr. Gonzales). The red Cadillac was reported abandoned on January 23 and 24. *Id.* at 1243, 1252. Officer Hatch reported that when the body was found, no money, jewelry, watch or ring was found. *Id.* at 1258.

Based on the evidence presented, we hold that there was sufficient evidence presented to create an inference that petitioner robbed, kidnapped and murdered Mr. Martinez–Moles. If the improperly excluded testimony of Ms. Gutierrez had been admitted, the court would have considered it solely for the credibility of Mr. Gonzales. There was sufficient corroborating evidence presented by other witnesses to create such an inference. Petitioner's excluded testimony would not have "eroded the standard of proof" required to bind the petitioner over for trial. Petitioner was properly held over for trial based on that inference. Therefore, there was no denial of due process when the state judge excluded the testimony of Ms. Gutierrez and defense counsel regarding Mr. Gonzales' alleged status as an accomplice.

In *Barquera v. People of the State of California*, 374 F.2d 177, 179 (9th Cir. 1967), the magistrate refused to allow discovery of notes which the petitioner wanted to use to impeach the State's chief witness. The court noted that the petitioner was convicted primarily upon the testimony of this witness. The court held that if the magistrate erred, it was harmless, since it was cured by the petitioner's opportunity to use the notes at trial for impeachment purposes. *Id.*

Similarly, the record does not reflect that petitioner Castellon was prevented from calling Ms. Gutierrez as a witness at trial in order to impeach Mr. Gonzales or establish he was an accomplice thereby requiring corroborating testimony at trial. Indeed, Mr. Gonzales was corroborated at trial by Ms. Daisy Chisam. Therefore, the justice court's error did not result in preju-

dice and we see no constitutional basis for petitioner's contention.

## III. SUPPLEMENTAL INFORMATION

■ Petitioner alleges in his third ground for relief that the supplemental information was constitutionally infirm because it failed to provide adequate notice of the elements of the crime. Under the sixth amendment, an accused has the right "to be informed of the nature and cause of the accusation against him." The constitution is satisfied if the information states "the elements necessary of the offense charged with sufficient clarity to apprise a defendant of what to defend against." *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.1985) *citing Russell v. U.S.*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

Petitioner relies on *Barren v. State*, 99 Nev. 661, 669 P.2d 725 (1983) which held that where the State predicates criminal liability on a theory of aiding and abetting, the information must specifically allege aiding and abetting and should provide additional information as to specific acts of aiding and abetting so the defendant has adequate notice to prepare his defense. However, as soon as the *Barren* decision became law, the prosecutor filed the supplemental information which charged the petitioner with aiding and abetting.

The supplemental information alleged that four men (1) did (2) without authority and with malice aforethought (3) wilfully and feloniously (4) kill (5) a human being (6) by shooting at and into (7) the victim's body (8) using a deadly weapon, or, if defendants did not personally shoot at and into the victim's body, all defendants did aid and abet in the murder by performing four acts: (1) a plan, (2) a seizure, (3) a murder and (4) a concealment. The facts testified to at the preliminary hearing show that all four defendants entered into a plan to kidnap, rob and murder Luis Martinez–Moles. Under these facts, the State could not have alleged which particular defendant personally shot the victim, or, which particular defendant aided and abetted in the killing. However, in either case, he would be guilty of murder and the petitioner had adequate

notice in which to prepare his defense. Furthermore, it is clear from the record that the petitioner had actual notice. Therefore, there was no prejudicial effect on petitioner's due process rights.

## IV. TRIAL TESTIMONY OF DOMINGO GONZALES

■ Petitioner alleges in ground four of his petition for writ of habeas corpus that the convictions obtained were based upon the uncorroborated testimony of a person falling within the definition of a co-conspirator which under Nevada law required corroboration. N.R.S. 175.291. An accomplice is one who is liable to prosecution for the identical crime charged against the defendant. N.R.S. 175.291(2). This Court need not decide whether Gonzales was an accomplice or not, because federal constitutional law does not require the testimony of an accomplice be corroborated. *Nolen*, 372 F.2d at 17. In addition, even if Gonzales was an accomplice, his testimony was consistent with Daisy Chisam's testimony at trial. Therefore, petitioner's claim is without merit.

## V. DESTRUCTION OF POSSIBLY EXCULPATORY EVIDENCE

■ Petitioner's fifth ground for relief is that his conviction was obtained in violation of his due process rights as a result of the unauthorized release of one 1979 two-door El Dorado automobile and items of personal property prior to examination by experts on behalf of the defense. Petitioner further alleges that the early release resulted in the permanent destruction of exculpatory evidence.

The State's failure to preserve evidentiary material which "could have" been subjected to tests, the results of which "might have" exonerated the defendant does not constitute a denial of due process unless the petitioner can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *Mitchell v. Goldsmith*, 878 F.2d 319, 322–23 (9th Cir.1989). Petitioner failed, establishing that the material was actually exculpatory. Because the ma-

terial was only potentially useful, petitioner had the burden to prove bad faith. Nothing in the record supports a finding of bad faith on the part of police. It follows, therefore, that there was no violation of the Due Process Clause.

## VI. TESTIMONY OF DAISY CHISAM

■ Finally, Petitioner alleges that the testimony of Daisy Chisam was perjured and therefore the conviction based on this allegedly false testimony must be set aside. Before a conviction can be set aside on the ground of perjured testimony, the movant must show that the testimony was perjured and the prosecuting officials knew at the time such testimony was used, that it was perjured. *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1340 (9th Cir.1977) *cert. denied* 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769. Although the record indicates a strong possibility that part of Daisy Chisam's testimony was perjured, there is no evidence that the State knowingly used the false testimony.

The pertinent facts in the instant case are similar to the questioned testimony examined in *Reynoso* where the Government did not knowingly present false testimony. The defendants knew well in advance of the trial what the witness's testimony would include and were fully prepared to rebut the testimony and thereby impeach his credibility. Therefore, the "alleged perjury was fully explored at trial." *Id.*

In the instant case, the petitioner had advance notice, was fully prepared, and presented conflicting evidence to the jury in order to challenge Ms. Chisam's credibility. Although petitioner claims the false testimony was not corrected by the court, the record clearly reflects that the "alleged perjury was fully explored at the trial."

The trier of fact has a wide latitude in which to decide which witness to believe or disbelieve. *United States v. Clevenger*, 733 F.2d 1356, 1359 (9th Cir.1984). The jury is entitled to accept or reject the witness's testimony in whole or in part. *Id.* In the instant case, the jury was free to accept or reject Ms. Chisam's testimony in whole or in part. In view of the above

rules of law, petitioner's claim regarding the alleged perjured testimony of Ms. Chisam is without merit.

IT IS, THEREFORE, HEREBY ORDERED that the petition for writ of habeas corpus is DENIED. The Clerk shall enter judgment accordingly.